UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRAZIER CUNNINGHAM,

    Plaintiff,

    v.

STATE OF MICHIGAN DEPARTMENT OF
STATE POLICE, ET AL.,

    Defendants.
_____/

Case No. 17-cv-14224

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#21]**

**I. INTRODUCTION**

On December 29, 2017, Plaintiff Frazier Cunningham filed the instant 42 U.S.C. § 1983 action against the State of Michigan Department of State Police and Michigan State Troopers Benjamin Sonstrom and Lisa Lucio. Plaintiff alleges gross negligence, municipal liability, and violations of his constitutional rights stemming from an encounter on December 29, 2014. ECF No. 1. On June 21, 2018, Judge Cohn granted the Defendants' Motion for Partial Dismissal and dismissed all claims in Plaintiff's Complaint except for the § 1983 excessive force claim against Defendant Sonstrom. ECF No. 14.

Presently before the Court is Defendant Sonstrom's Motion for Summary Judgment, filed on August 19, 2019. ECF No. 21. After Judge Cohn issued a Show

1

Cause Order on November 4, 2019, Plaintiff filed his Response to the Defendant's Summary Judgement Motion on November 19, 2019.  ECF No. 26.  Defendant filed his Reply on December 3, 2019.  ECF No. 28.  Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter.  Therefore, the Court will resolve the instant motion on the briefs.  *See* E.D. Mich. L.R. § 7.1(f)(2).  For the reasons that follow, the Court will GRANT Defendant's Motion for Summary Judgment [#21].

## II. BACKGROUND

On December 29, 2014, Plaintiff Fraizer Cunningham was driving on Highway Interstate 94 near Romulus, Michigan.  ECF No. 1, PageID.2.  Defendant Michigan State Police Trooper Benjamin Sonstrom pulled Plaintiff over after observing tinted windows on his vehicle.  *Id.*  Once both vehicles stopped, Defendant Sonstrom approached the right passenger side of Plaintiff's vehicle and asked for his license and registration.  *See* ECF No. 21-5 at 1:19.  Cunningham provided the information without incident.  *Id.*  While reviewing Cunningham's documentation, Sonstrom asked him questions about his income and employment.  ECF No. 21, PageID.103.  Sonstrom asked to search Cunningham's vehicle but Cunningham denied the request.  *Id.*

Defendant then returned to his patrol vehicle where he ran Cunningham's information in the system.  *Id.*  In his incident report, Sonstrom wrote that he found

2

"a long criminal history to include gun charges, assaults on police officers and a recent armed robbery." ECF No. 21-2, PageID.118. When he approached Plaintiff's vehicle again, Sonstrom asked about this history and Cunningham responded that he only had old charges but "nothing major" on his record. ECF No. 21-5 at 8:27. Sonstrom also asked Plaintiff if he had any weapons or drugs in the vehicle and he responded that he did not. *Id.* at 8:41. Sonstrom asked two more times to search his vehicle, including a request for his dog to search the outside of the car, but Cunningham said no again and indicated that he was in a hurry. *See id.* at 9:02. Defendant claims that Cunningham's demeanor and answers to his questions indicated deceptive behavior, and he requested that Cunningham step out of the vehicle. ECF No. 21, PageID.104; ECF No. 21-5 at 9:25. Sonstrom patted Cunningham down in front of the patrol vehicle and did not find anything on his person. ECF No. 26, PageID.269.

Defendant then ordered Plaintiff to stand more than ten yards away from his vehicle while the canine searched the exterior of the car. ECF No.21, PageID.104. While Plaintiff states that he noticed "the K9 made no indication," ECF No. 26, PageID.269, Defendant claims that "the dog gave a positive indication for narcotics on the driver's side door seams." ECF No. 21, PageID.104. Next, Sonstrom approached Cunningham and asked again if there was any contraband in the vehicle. ECF No. 21-5 at 14:02. Cunningham responded that he shared the vehicle with his

3

wife, but that he did not think there is anything illegal inside. *Id.* at 14:30. Defendant Sonstrom and Trooper Lisa Lucio searched the interior of the vehicle, starting from the front passenger side door. *Id.* at 14:39.

After about two minutes, the troopers located a magazine for a 9mm pistol behind the driver's seat and a loaded 9mm pistol "in a storage space between the radio and the dashboard." ECF No. 21, PageID.105. Sonstrom completed the search and ordered Plaintiff to walk back towards him. ECF No. 21-5 at 17:18. As Cunningham approached him, Sonstrom pulled out his taser and pointed it towards Cunningham, who was on a phone call, and ordered him to get on his knees. *Id.* at 17:35. Cunningham complied. *Id.* Sonstrom ordered him to put his phone on the ground and pushed him down onto his stomach with his left hand. *Id.* Cunningham claims that at this point, Sonstrom "proceeded to take his taser and strike Plaintiff in the neck/head area." ECF No. 26, PageID.270. Once Plaintiff placed his hands behind his back, Sonstrom re-holstered his taser and handcuffed him on the ground. ECF No. 21-5 at 17:48.

Trooper Lucio and Defendant Sonstrom then helped Cunningham onto his feet and Sonstrom searched him again. *Id.* at 19:33. Sonstrom walked Plaintiff to the patrol vehicle, where he was transported to the police station for processing. ECF No. 26, PageID.270.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. DISCUSSION

**A. Count I: Fourth Amendment Excessive Force**

To answer the question of whether a defendant's use of force violated the Fourth Amendment "turns on whether [their] actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to [their] underlying intent or motivation." *Kent v. Oakland Cnty.*, 810 F.3d 384, 390 (6th Cir. 2016) (internal quotation marks omitted). "The reasonableness of a particular

use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Factors to consider are: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to flee. *Id.* "The ultimate question, however, is whether the totality of the circumstances justifies a particular sort of seizure." *Kent*, 810 F.3d at 390 (internal quotation marks omitted). The district court "must take into account the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Id.*

Here, Cunningham argues that Sonstrom used excessive force when he (1) pointed his taser at him, (2) pushed him from his knees to the ground, and (3) hit him in the back of his neck with the taser during the arrest. Plaintiff claims that he posed no safety risk to the officers, and that Sonstrom instead was trying "to control an individual that was not out of control." ECF No. 26, PageID.276. The dash camera footage, however, does not support Cunningham's allegations of excessive force during the arrest.

First, the video does depict Sonstrom pulling the taser out towards Plaintiff for a few moments, but it is never deployed. *See* ECF No. 21-5 at 17:35-17:47.

6

Once Cunningham follows the order to drop to his knees, the video next shows Sonstrom pushing him towards the ground. *Id.* at 17:42. Defendant states in his incident report and his deposition testimony that the push was necessary because Cunningham would not comply with the request to put his phone on the ground. *See* ECF No. 26-4, PageID.329; ECF No. 26-5, PageID.357-358. Under a totality of the circumstances, this action was not unreasonable to effectuate Plaintiff's arrest; Sonstrom was aware that Plaintiff possessed a firearm in his vehicle, and Plaintiff did not immediately comply with the Defendant's order to drop his cell phone. Finally, while Cunningham claims that "he felt something hit him on the back of his neck which he believed to be Defendant's taser," the dashcam footage does not show any blows or strikes to Plaintiff as he contends. ECF No. 26, PageID.277.

Even in the light most favorable to Plaintiff, neither his arguments nor the dash camera footage establishes that there was an encounter amounting to excessive force. Accordingly, there was no violation of Plaintiff's constitutional rights here.

### B. Qualified Immunity

Defendant Sonstrom additionally asserts that he is entitled to qualified immunity for Plaintiff's excessive force claim against him. ECF No. 21, PageID.111. To determine whether a police officer is entitled to qualified immunity, the Court applies a two-prong test: "(1) whether the facts, when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated

a constitutional right; and (2) whether the right violated was clearly established such 'that a reasonable official would understand that what he is doing violates that right.'" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (citation omitted). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson v. Callahan*, 555 U.S. 223, 243–44 (2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

This Court has found that the record here does not establish any constitutional violations. Thus, Plaintiff cannot defeat Defendant's qualified immunity defense. Defendant is entitled to qualified immunity on Plaintiff's excessive force claim.

## V. CONCLUSION

For the reasons discussed herein, the Court GRANTS Defendant's Motion for Summary Judgment [#21].

**IT IS SO ORDERED.**

                                                   s/Gershwin A. Drain_____
                                                   GERSHWIN A. DRAIN
                                                   UNITED STATES DISTRICT JUDGE

Dated: May 27, 2020

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 27, 2020, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager